ASH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emily Noelle Mihaylo,<br>　　　　Plaintiff,<br>v.<br>James Joseph Knochel,<br>　　　　Defendant | No.   CV 19-08137-PCT-GMS (JZB)<br><br>**ORDER** |

On January 11, 2018, James Joseph Knochel filed, as "next friend" of purported Petitioner Emily Noelle Mihaylo, a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, paid the filing fee, and sought a Temporary Restraining Order and "Ex-Parte Evidentiary Hearing," as well as the appointment of counsel for Ms. Mihaylo.  In order to facilitate consideration of the documents, the Clerk of Court assigned the matter as case no. CV-18-08004-PCT-GMS (JZB).  In the Petition, Mr. Knochel alleged that Ms. Mihaylo had been ordered into treatment at a mental health facility, that she was being compulsorily medicated, and that the medications were making her condition worse, all in violation of the Constitution and laws of the State of Arizona.  On January 24, 2018, Ms. Mihaylo sent a letter to the Court — which the Clerk of Court docketed as a Motion to Dismiss — stating that

> "[A]t no time did I file this claim and I would like it to be removed.  I believe that my ex-boyfriend used my information to file this claim.  The reason he filed this claim is unknown to me.  Moving forward[,] I would like to have this case dismissed, thrown out, and terminated all together."

On January 26, 2018, Mr. Knochel filed a "Response" to the Motion, suggesting that the Motion had not been written by Ms. Mihaylo, or at least not by her "of her own free will," and that the Motion otherwise is "evidence of [Petitioner's] status as a vulnerable person, and as further justification for the necessity of appointed counsel for [Ms.] Mihaylo."

By Order dated February 7, 2018, the Court found that Mr. Knochel had failed to demonstrate that Ms. Mihaylo was unable to prosecute this action on her own and that he was acting in the best interests of Ms. Mihaylo, and that he thus did not have standing to sue as "next friend." Accordingly, the Petition was dismissed without prejudice for lack of jurisdiction. Judgment was entered the same day, and case no. CV-18-08004-PCT-GMS (JZB) was closed. Mr. Knochel thereafter filed several additional documents that either failed to request any relief or were dismissed for lack of standing.

On March 25, 2019, Mr. Knochel filed, again as the purported "next friend" of Ms. Mihaylo, another pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This new Petition was assigned case no. CV-19-08086-PCT-GMS (JZB). Therein, Mr. Knochel again alleged that the January 24, 2018 letter in case no. CV-18-08004-PCT-GMS (JZB) was not sent by Ms. Mihaylo, but was rather a fraudulent document sent by the administrators of Ms. Mihaylo's mental healthcare facility. Mr. Knochel also provided a letter, which he purported to have been handwritten by Ms. Mihaylo, stating that "the letter that I signed was not written by me. I was pressured into signing it by ViewPoint staff." Attached to the Petition were also numerous exhibits, including a November 29, 2018 Minute Entry in a Yavapai County Mental Health Court hearing noting that "Defendant [apparently referring to Ms. Mihaylo] has been contacted by James. The Court notes to block James from phone…"; a December 13, 2018 Minute Entry in the same Yavapai County Mental Health Court case ordering that "Defendant shall have no contact with James Knochel"; a December 13, 2018 "Comprehensive Mental Health Court Contract" in the same case that is signed by Ms. Mihaylo and stipulates that Ms. Mihaylo will have "no contact with James Knochel"; and a December 27, 2018 "Comprehensive Mental Health

Court Contract" that is again signed by Ms. Mihaylo and again stipulates that she will have "no contact with James Knochel."

Accordingly, by Order dated May 7, 2019, the Court found that, given the multiple no-contact orders entered against Mr. Knochel, Mr. Knochel had again failed to demonstrate that he had standing to sue as "next friend." Accordingly, the Petition was dismissed without prejudice for lack of jurisdiction. Judgment was entered the same day, and case no. CV-19-08086-PCT-GMS (JZB) was closed.

Mr. Knochel has now "removed" an Order of Protection that Ms. Mihaylo recently sought, and obtained, against him in Prescott Justice Court case no. J1303-PO2019000067.[1] In order to facilitate consideration of the "removal," the Clerk of Court has opened the instant matter. Mr. Knochel asserts in his Notice of Removal (Doc. 1) that this Court has jurisdiction over the Order of Protection pursuant to 28 U.S.C. §§ 1343(a)(1) and (a)(3), and alleges that the Order of Protection was the result of a "conspiracy … to deprive [Ms. Mihaylo] and [Mr. Knochel] of rights secured by the Constitution," namely, as Mr. Knochel puts it, the "freedom of association guaranteed by the [First] Amendment and the equal protection of the law and privilege of habeas corpus guaranteed by the [Fourteenth] Amendment." Mr. Knochel "requests this court to fairly consider whether the issuance of the Order of Protection by the Prescott Justice Court was justified," and "to intervene in the conspiracy against Plaintiff's and Defendant's civil rights."

Title 28, section 1441(a) provides that "any civil action brought in a State court" may be removed to federal court by a defendant if the federal court has original jurisdiction

---

[1] The Petition for the Order of Protection, which is signed by Ms. Mihaylo, details multiple instances in which Mr. Knochel has harassed Ms. Mihaylo, including by "show[ing] up at ViewPoint after he has been asked not to come back"; "writ[ing] letters to the Adult Probation Department [] trying to get [Ms. Mihaylo] off probation [and that she] asked [Mr. Knochel] to stop doing this"; "showing up at [a] mental health hearing after being asked by the probation department in months prior not to come back to mental health court,"; and showing up at the mental health court "for the third time, [being] escorted out of the court room" but not leaving the building, and then "harass[ing]" Ms. Mihaylo, an employee from her mental health facility, and a court employee "by taking pictures on his phone." (Doc. 1 at 14-15). Ms. Mihaylo further states that she has "asked [Mr. Knochel] to stop writing letters to the courts pertaining to [her]." (*Id.*). The Order of Protection itself mandates that Mr. Knochel have no contact with Ms. Mihaylo. (*Id*. at 10). It is dated April 4, 2019, and is good for one year from that date. (*Id.*).

over the matter at issue. 28 U.S.C. § 1441(a). While assigned a state court case number, the Order of Protection that Mr. Knochel seeks to remove, however, is, as its name suggests, an "order," not a "civil action brought in a State court." As such, although Mr. Knochel attempts to stylize the Order as allegedly infringing on various civil rights, it is not an action that is properly removable to this Court. *See e.g. Irving Trust Co. v. Century Export & Import, S.A.*, 464 F. Supp. 975, 989 (S.D.N.Y. 1979) (grounds for removal must inhere in plaintiff's claim, not in matter of defense or counterclaim); *Rettig v. Arlington Heights Federal Sav. And Loan Ass'n*, 405 F. Supp. 819, 822 (N.D. Ill. 1975), *superseded on other grounds by statute* (in order to obtain removal, the controversy must generally be disclosed on the face of the complaint, unaided by defendant's answer or petition for removal). The Order of Protection itself could not have been brought in federal court, as it is purely a matter of state law involving non-diverse parties, no questions of federal law, and does not otherwise implicate this Court's original jurisdiction. *See* 28 U.S.C. §§ 1331, 1332.

Further, the Order of Protection expressly provides that if the Defendant (*i.e.,* Mr. Knochel) "disagree[s] with the Order, [he] has the right to request a hearing, which will be held within 5 to 10 business days after [a] written request has been filed in the Court that issued this Order." (Doc. 1 at 10). Mr. Knochel does not indicate whether he availed himself of this process. If he did not, or if he did and lost and now seeks a second bite at the apple through this Court, the *Rooker-Feldman* doctrine bars federal review. The *Rooker-Feldman* doctrine "is confined to cases of the kind from which it acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283 (2005); *see also Mothershed v. Justices of the Supreme Court,* 410 F.3d 602 (9th Cir. 2005). Lower federal courts lack jurisdiction to review state court decisions, and state court litigants may only obtain federal review by filing for a writ of certiorari in the Supreme Court of the United States. *Mothershed,* 410 F.3d at 606 (citing *Rooker v.*

*Fid. Trust Co.,* 263 U.S. 413, 416 (1923) and *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 486-87 (1983)).

To the extent that Mr. Knochel *did* avail himself of the appeals process described in the Order of Protection and that appeal remains ongoing in state court, the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), prevents a federal court in most circumstances from directly interfering with ongoing criminal proceedings in state court. *Mann v. Jett*, 781 F.2d 1448, 1449 (9th Cir. 1986) (*per curiam*). "The policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (setting forth factors to be considered). "Where vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'" *Id.* (quoting *Moore v. Sims*, 442 U.S. 415, 426 (1979)). "'[T]he . . . pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims . . . .'" *Id.* (quoting *Moore*, 442 U.S. at 430). The *Younger* abstention doctrine continues to apply while the case works its way through the state appellate process. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975) ("Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial.")

The state's vital interest in the protection of its citizens is obvious, and the federal "intervention" that Mr. Knochel seeks would impede that interest. Further, Mr. Knochel's continuing attempts to use this Court to make an end run around the state courts fails to demonstrate that he is otherwise unable to seek the vindication of his alleged claims in the state court proceedings themselves; indeed, and as noted, the Order of Protection itself explicitly provides a process whereby Mr. Knochel may appeal the Order in the Prescott Justice Court. As such, even if this case was properly removed, this Court would exercise its discretion to abstain from interfering in Ms. Mihaylo's ongoing attempts to stop Mr. Knochel's continuing harassment. *See e.g. Shepherd v. Egan*, 767 F. Supp. 1158, 1163 (D.

Mass. 1990) (fact that claim has been properly removed to federal court does not mean that court must proceed to resolution on the merits; under abstention doctrine, court may refuse or delay its decision on legal issue, thereby leaving plaintiff to seek remedy in state court); *Oquendo v. Dorado Beach Hotel Corp.*, 382 F. Supp. 516, 519 (D.C. P.R. 1974) (primary justification for abstention of federal courts is unwarranted federal interference in interpretation and application of local statutory law).

Finally, the federal courts have the responsibility to ensure that their limited resources "are allocated in a way that promotes the interests of justice." *In re McDonald*, 489 U.S. 180, 184 (1989). "Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *DeLong v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990); *see also O'Loughlin v. Doe*, 920 F.2d 614, 618 (9th Cir. 1990). District courts have the inherent power to act to ensure that the business of the Court is conducted in an orderly and reasonable fashion. *See e.g. Visser v. Supreme Court of the State of California*, 919 F.2d 113, 114 (9th Cir. 1990). This inherent authority includes the power to "regulate the activities of abusive litigants by imposing carefully tailored restrictions under the appropriate circumstances." *DeLong v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) (quoting *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989)).

Although the Court will not impose a vexatious litigant order enjoining Mr. Knochel's filings at this time, if Mr. Knochel persists in using this Court as what appears to be a vehicle to further his harassment of Ms. Mihaylo, the Court may revisit its leniency in the future.

The Clerk of Court will be directed to remand this matter to the Prescott Justice Court. Mr. Knochel's Application for Leave to Proceed In Forma Pauperis (Doc. 2) and Motion to Appoint Counsel (Doc. 4) will be denied as moot.

**IT IS ORDERED:**

(1) This matter is **remanded** to the Prescott Justice Court.

(2) The Clerk of Court is directed to mail a **certified copy** of this Order to:

Prescott Justice Court  
Yavapai County Courthouse  
c/o Judge Glenn A. Savona  
120 South Cortez Street  
Prescott, Arizona 86303

(3)    Mr. Knochel's Application for Leave to Proceed In Forma Pauperis (Doc. 2) and Motion to Appoint Counsel (Doc. 4) are **denied** as moot.

(4)    The Clerk of Court is directed to **close** this case.

Dated this 20th day of May, 2019.

_____
G. Murray Snow
Chief United States District Judge